**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SHERRY S. PARKS, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JKB-16-188 |
| MARYLAND CORRECTIONAL | * | |
| INSTITUTION FOR WOMEN,[1] | | |
| DR. JAYA SINGHA,[2] | * | |
| WEXFORD HEALTH,[3] | | |
| | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM OPINION

Under consideration are Sherry S. Parks's prisoner civil rights complaint filed pursuant to 42 U.S.C. § 1983 and the unopposed motion to dismiss or, in the alternative, motion for summary judgment filed by counsel on behalf of defendant Dr. Jaya Singh.  The matter is ready for disposition; no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2016).

## BACKGROUND

On January 19, 2016, Sherry Parks filed this complaint pro se, alleging that since July of 2013, she has received inadequate medical care at the Maryland Correctional Institution for Women (MCIW) in violation of her constitutional rights. Parks complains that she suffers terrible back pain every day and constant numbness and tingling in her hands and fingers.  She

---

[1]   The Maryland Correctional Institution for Women is not a "person" subject to suit under 42 U.S.C. § 1983 and has not been served.  Inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983.  *See Preval v. Reno,* 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail,* 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit.").

[2]  The docket shall be amended to reflect the correct spelling of this defendant's surname as Singh.

[3]  The Court notes that defendant's name is Wexford Health Resources, Inc.  Parks raises no specific claims against defendant Wexford and service was not effectuated on this defendant.  Therefore, the complaint against Wexford shall be dismissed.

alleges that she was told to see a specialist and to start physical therapy and medications for pain management. ECF 1.  She does not indicate, however, who recommended that she see a specialist and begin physical therapy.  Parks asserts she is unable to properly clean herself after using the restroom and stains her undergarments.  ECF No. 1 at 3.  As relief, she asks for "medical care and medications that I need and deserve."  *Id.*

## DEFENDANT'S RESPONSE

In support of the motion to dismiss or, in the alternative, motion for summary judgment, Jaya Singh, M.D., by her counsel, filed her affidavit and 97 pages of Parks's medical records. Parks does not controvert the exhibits.

The exhibits demonstrate that Parks is a 44-year-old female inmate who is treated in the chronic care clinic for lower back pain as well as for other chronic medical conditions.  ECF 7-3. Since July 12, 2013, when Parks entered MCIW and self-reported suffering chronic back pain due to scoliosis and a herniated disc managed with nonsteroidal anti-inflammatory drugs (NSAIDS) and Percocet, she has received ongoing evaluation, monitoring, and medications for back pain.  *Id*; *see also* ECF 7-5 (Singh decl. ¶ 5).

Dr. Singh, as well as Dr. Getachew Tefferra, M.D., nurse practitioners, and physicians' assistants, has examined Parks regularly at MCIW clinics and sick call for her complaints of back pain, and her later presented complaints of numbness and tingling in her fingers.  Dr. Singh and other medical providers have prescribed medications, NSAIDS, analgesics, and muscle relaxants including Naproxen, Indomethacin, Robaxin, Tylenol Extra Strength 500 mg., and Baclofen.  They have also cautioned Parks that NSAIDS may prompt gastrointestinal bleeding and other side effects and inquired regularly whether she is experiencing effects from the medication.  Medical providers also adjusted Parks's medication dosages and suggested

alternative medicines when she reported they provided ineffective pain relief.  Medical providers ordered spinal x-rays that revealed no evidence of an acute fracture, dislocation, or subluxation. Additionally, they recommended an exercise program and weight loss for Parks to alleviate her back pain.  ECF No. 7-4.

In April of 2014, Park complained of numbness and tingling to both thumbs, index fingers, and middle fingers.  Parks's condition was diagnosed as unrelated to her lower back condition, and she was provided wrist braces to alleviate the symptoms of tingling and numbness.  Parks has since been noted as uncompliant with medical recommendations to wear the wrist braces.  ECF No. 7-5 ¶ 9; ECF No. 7-4 at pp. 21-23.

Parks's medical encounters specifically with defendant Singh are as follows:  On October 11, 2013, Dr. Singh examined Parks at the chronic care clinic for back pain.  Singh observed that Parkss' coordination and balance were intact and she sat comfortably on a chair. Parks denied injuring her back and asked for a renewal of the Indomethacin prescription.  Parks was aware of the side effects of NSAIDS such as gastrointestinal bleeding, kidney failure, and ototoxicity.  Parks's previous cervical spine x-ray revealed mild loss of vertebra body height and disc space generally and most evident at C5 and C6.  Parks's foraminal openings were intact without compression on the nerves.  Her evaluation revealed no abnormality in the lumbar curvature and negative posterior tenderness in the spine.  Singh renewed Parks's Indomethacin and increased it to twice daily as needed.  ECF No. 7-4 at pp. 13-16.

On June 29, 2015, Dr. Singh examined Parks in the chronic care clinic for back pain and other conditions.  Singh noted that Parks was not wearing the wrist braces that had been prescribed for her.  Singh observed that Parks's gait, coordination, and balance were intact and that she sat comfortably on the chair.  Parks denied any recent injury or change in her pain

pattern.  Parks demanded Indomethacin or a narcotic for her back pain.  Singh noted that Parks's

Tylenol prescription was still active and that Park was aware that the Indomethacin had been

discontinued by another medical provider due to Parks's report of rectal bleeding.  Parks became

angry and argumentative and "briskly" left the examination room.  *Id*. at p. 62.

On September 4, 2015, Dr. Singh examined Parks in the chronic care clinic.  Singh

observed that Parks was not wearing her wrist braces and her gait, coordination, and balance

were intact.  Parks sat comfortably on a chair and denied any recent injury or change in her pain

pattern.  Singh reports that Parks demanded narcotics for her back pain.  Parks stated she was a

janitor who actively sweeps, mops, and carries trash.  Parks was prescribed Tylenol and Robaxin.

Parks became angry and argumentative, threatened legal action, slammed a heavy door, left the

examination room briskly, and ran and yelled in the hallway.  *Id*. at p. 73.

On February 12, 2016, Singh examined Parks in the chronic care clinic.  Parks stated that

other medical providers had recently addressed her pain medication concerns.  Parks was not

wearing her wrist braces.  *Id*. at p. 83.

On May 13, 2016, Singh examined Parks who was not wearing her wrist braces.  Parks

stated that she was recently seen by another medical provider and all her concerns were

answered.  Parks requested refills of her prescriptions.  Singh noted that Parks denied adhering to

her prescribed medication regimen.   Singh also recommended that Parks consider lifestyle

modifications including exercise, a healthful diet, and weight control.  *Id*. at p. 97.

Dr. Singh states that it is her opinion to a reasonable degree of medical probability that

Parks has received appropriate treatment for her chronic low back pain.  Parks will also continue

to be regularly monitored.  ECF No. 7-5 ¶ 19.  Singh attests that while Parks's lower back pain is

currently controlled by Indomethacin, there is no guarantee that it will continue to be effective.

It is also possible that NSAIDS may need to be discontinued if Parks's gastrointestinal bleeding recurs or she suffers other side effects.  Singh opines that Parks's condition does not currently warrant introducing narcotic pain relievers or referring her to other medical specialists for pain relief.  Parks has been advised to perform gentle stretching exercises on her own, and there is no indication for physical therapy.  Parks has also been advised that exercise and weight loss are likely to improve her back condition.  *Id.* ¶ 18.

**STANDARD OF REVIEW**

Defendants submit they are entitled to dismissal or summary judgment in their favor on several grounds, including that the claims are barred for lack of exhaustion and there is no genuine dispute as to any material fact.

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*  "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in

the light most favorable to the nonmoving party." *Downing v. Baltimore City Bd. of School Comm'rs*, Civ. No. RDB 12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Defendants have filed copies of verified documents and declarations with their pleadings. The court may consider a wider range of documents when it treats a motion to dismiss as a motion for summary judgment, which it may do pursuant to Fed. R. Civ. P. 12(d). *See Syncrude Canada Ltd.*, 916 F. Supp. 2d 620, 623 (D. Md. 2013). When the court does so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Notably, "the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion." *Ridgell v. Astrue,* Civ. No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012). Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'" *Walker v. Univ. of Md. Med. Sys. Corp.*, Civ. No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Though the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Here, defendant designates her motion as a "motion to dismiss or, in the alternative, motion for summary judgment." Further, although Parks was provided the opportunity to dispute these exhibits with verified exhibits and affidavits (ECF No. 8), she has chosen not to do so. Thus, the Court deems it appropriate to treat Singh's dispositive motion, together with the exhibits and declarations, as a motion for summary judgment.

## DISCUSSION

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. A prison official violates the Eighth Amendment when the official shows "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A deliberate indifference claim consists of two components, objective and subjective. *Jackson*, 775 F.3d at 178. Objectively, the inmate's condition must be "serious," or "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)); *see also Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam) ("Questions of medical judgment are not subject to judicial review."). Subjectively, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (emphasis in original).

If a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995); *see also Makdessi v. Fields,* 789 F.3d 126, 133 (4th Cir. 2015). "A prison official's subjective actual knowledge [of a risk] can be proven through circumstantial evidence . . . ." *Makdessi*, 789 F.3d at 133. Disagreement between an inmate and a medical provider about the proper course of treatment does not establish an Eighth Amendment violation in the absence of

7

exceptional circumstances.  *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1979) (per curiam) (A doctor's "failure to exercise sound professional judgment [does] not constitute deliberate indifference to serious medical needs.").

Although the Eighth Amendment proscribes deliberate indifference to a prisoner's serious medical needs, it does not require that a prisoner receive medical care by a provider of his choice.  The right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."  *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).  Moreover, "any negligence or malpractice on the part of the doctors in missing the diagnosis does not, by itself, support an inference of deliberate indifference."  *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).

Defendant does not dispute that Parks's condition is serious and painful.  Instead, she denies that she was deliberately indifferent to Parks's medical needs.  Defendant has provided uncontroverted documentation that she and other medical providers have treated and continue to provide ongoing care for Parks.  The care has included prescription medication, wrist braces, and recommendations for life style modifications.  Dr. Singh attests that prescribing narcotics for pain or referring Parks to a specialist is not medically indicated at this time.  To the extent Parks's claims of inadequate medical treatment reflect mere disagreement concerning the conservative regimen of care she has received, such disagreement does not support a finding of deliberate indifference.  In sum, there is no evidence that Dr. Singh was deliberately indifferent to Parks's medical concerns or acted to deliberately deny her necessary medical care.  Thus, even when the facts are viewed in the light most favorable to Parks, no genuine issue of material fact exists as to whether Singh's care of Parks amounted to deliberate indifference to a serious

medical need.  Accordingly, Singh is entitled to summary judgment in her favor as a matter of law.

## CONCLUSION

For these reasons, Dr. Singh's motion to dismiss or, in the alternative, motion for summary judgment will be granted.  A separate order follows.

<u>February 24, 2017</u>                    _____/s/_____
Date                                                      James K. Bredar
                                                              United States District Judge